1  LLOYD A. BOOKMAN (State Bar No. 89251)
   E-Mail: lbookman@health-law.com
2  FELICIA Y SZE (State Bar No. 233441)
   E-Mail: fsze@health-law.com
3  HOOPER, LUNDY & BOOKMAN, INC.
   1875 Century Park East, Suite 1600
4  Los Angeles, California 90067-2517
   Telephone: (310) 551-8111
5  Facsimile: (310) 551-8181

6  Attorneys for Plaintiff

7

8             UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 CALIFORNIA HOSPITAL            CASE NO. CV09-3694 DDP
   ASSOCIATION,                   (JCx)
12                                COMPLAINT
             Plaintiff,
13
        vs.
14
   DAVID MAXWELL-JOLLY,
15 DIRECTOR OF THE CALIFORNIA
   DEPARTMENT OF HEALTH CARE
16 SERVICES,
17           Defendant.

18

19              **JURISDICTION AND VENUE**

20      1.    Plaintiff California Hospital Association ("CHA") brings this

21 complaint pursuant to 28 U.S.C. sections 1331, 1343, 1367, and the Supremacy

22 Clause. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14 (1983).

23      2.    Venue lies in this judicial district under 28 U.S.C. section 1391, in that

24 Defendant David Maxwell-Jolly, Director of the California Department of Health

25 Care Services (the "Director") has offices within this judicial district and is thus

26 deemed to reside within this judicial district.

27 ///

28 ///

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

# INTRODUCTION

3.    The fabric of the health care safety net is quickly deteriorating.  For countless Californians, including an increasing number of uninsured and Medi-Cal beneficiaries, emergency departments are the difference between life and death and are the most important component of our State's health care "safety net." *See Bell v. Blue Cross of California*, 131 Cal.App.4th 121, 222 (2005).  As fewer physicians participate in Medi-Cal due to the deficient reimbursement rates, more Medi-Cal beneficiaries seek care from emergency service providers as their only source of health care. *See Independent Living Centers of Southern California v. Shewry*, 2008 WL 3891211, *9 (C.D. Cal. 2008).  Emergency departments, in turn, are legally obligated to provide medical services to evaluate or stabilize emergency medical conditions. *See Bell*, 131 Cal.App.4th at p. 211.  "The prompt and appropriate reimbursement of emergency providers ensures the continued financial viability of California's health care delivery system." *Id.* at 218.

4.    Hospital care in California is at a cross-roads.  During the past 13 years, 90 California hospitals have permanently closed, resulting in the loss of thousands of acute care beds and 41 emergency rooms.  Hospitals frequently cite inadequate reimbursement, including Medi-Cal reimbursement, as a key reason for the closures.

5.    The deterioration of the California safety net is perhaps most evident in Los Angeles County, where, in some areas, the healthcare system is now in crisis.  Emergency room and hospital closures in Los Angeles County make Los Angeles County especially vulnerable to reductions in Medi-Cal payments.   As other providers limit their participation in the Medi-Cal program, increasing numbers of patients will seek care at Los Angeles County's remaining emergency rooms, which struggle operationally and financially to care for them.

6.    By this action, hospitals seek an injunction to invalidate and stop the implementation of mandated payment rates from Medi-Cal managed care plans for emergency and poststabilization services provided by hospitals that do not contract

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1  with those plans ("Non-Contracted Hospitals"). The Director has established
2  payment rates to Non-Contracted Hospitals for inpatient emergency services ("Non-
3  Contracted Hospital Emergency Rates") at an average of the rates paid to certain
4  hospitals under Medi-Cal pursuant to contracts with the State. The Director has
5  established payment rates to Non-Contracted Hospitals for services provided once
6  an emergency patient is stabilized ("Non-Contracted Hospital Poststabilization
7  Rates") for most hospitals as the lesser of 90% of a hospital's interim rate (as
8  described below) and 95% of the average of the rates paid to certain hospitals
9  pursuant to Medi-Cal contracts with the State. This is the precise methodology of
10  payment that has recently been enjoined by the Ninth Circuit in *California*
11  *Pharmacists Association v. Shewry* (9th Cir. 2009) __ F. 3d. __, 2009 WL 975458.

12      7.  These mandated payment rates (collectively, "Non-Contracted Hospital
13  Rates") will drastically impair payments to hospitals for emergency and
14  poststabilization services, falling far below the costs incurred by many of these
15  hospitals for these services. These Non-Contracted Hospital Rates, by virtue of
16  being based in part or in whole on statewide average rates, are unreasonable by
17  making payments without taking into account the nature of services provided, e.g.,
18  regardless of whether the patient was a gunshot victim (which incurs a lot of
19  services and costs) or mistook indigestion for a heart attack (which often simply
20  involves monitoring the patient at minimal costs). In many cases, these amounts
21  will result in payments less than the amounts hospitals would receive from the
22  Department for the exact same services. This disparity will undoubtedly cause some
23  hospitals to consider closing emergency rooms in the struggle to remain financially
24  viable.

25      8.  The Non-Contracted Hospital Rates are illegal because California
26  failed to fulfill its legal mandate under federal law to ensure that those rates are
27  consistent with efficiency, economy, quality of care and sufficiency of access. 42
28  U.S.C. § 1396a(a)(30)(A) ("Section 30(A)"). The State further violated federal law

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    by mandating these rates without the proper public process required to establish

2    payment rates to hospitals. 42 U.S.C. § 1396a(a)(13)(A) ("Section 13(A)"); 42

3    C.F.R. § 447.205. Indeed, these Non-Contracted Hospital Rates require an

4    amendment to the California Medi-Cal State Plan, which may not be implemented

5    prior to federal approval.

6         9.    The Non-Contracted Hospital Rates are further unlawful as an

7    unconstitutional taking because they take property from Non-Contracted Hospitals

8    to give to Medi-Cal managed care plans without any public use or public purpose.

9         10.   The Non-Contracted Hospital Emergency Rates also violate and are

10   preempted by 42 U.S.C. section 1396u-2(b)(2)(D), because they do not include

11   supplemental payments to hospitals under their Medi-Cal contracts in the average

12   rates and are computed as straight, unweighted average. The Non-Contracted

13   Hospital Emergency Rates therefore are not an accurate average of the rates

14   received by hospitals under their Medi-Cal contracts, and are not a reasonable

15   computation of the amounts the Non-Contracted Hospitals would receive for

16   services under the Medi-Cal fee-for-service program for emergency services.

17        11.   The Non-Contracted Hospital Poststabilization Rates are also illegal

18   because they establish a new standard of payment that does not comport with the

19   requirements of 42 U.S.C. section 1396u-2(b)(2)(A)(ii), 42 C.F.R. section 438.114

20   or California Welfare and Institutions Code section 14091.3(c)(3) that incorporates

21   by reference 42 C.F.R. section 438.114.

22        12.   The Non-Contracted Hospital Rates are unlawful because they were

23   implemented as underground regulations in violation of the California

24   Administrative Procedure Act through the issuance of informal "All Plan Letters,"

25   and not formal rulemaking.

26        13.   Lastly, the Non-Contracted Hospital Rates are unlawful because they

27   attempt to establish rates that are lower than: (1) the "reasonable charges" rate of

28   payment required for emergency services set forth in California Health and Safety

1  Code section 1317.2a(d); (2) the "charges" rate of payment for poststabilization
2  services set forth in California Health and Safety Code section 1268.2; and the
3  "reasonable and customary value" of services rate of payment required for all
4  healthcare services provided by non-contracted providers required set forth in Title
5  28, California Code of Regulations section 1300.71(a)(3).

6      14.    For these reasons and the reasons set forth below, the Non-Contracted
7  Hospital Rates violate federal law, the federal and state constitutions and California
8  law.  Accordingly, Plaintiff seeks declaratory and injunctive relief to invalidate the
9  Non-Contracted Hospital Rates and to ensure that Non-Contracted Hospitals are not
10 forced to provide services at a loss, to the financial benefit of managed care plans.

11

12 **THE PARTIES**

13     15.    Defendant DAVID MAXWELL-JOLLY is the Director of the
14 Department of Health Care Services and, as such, has the responsibility to
15 administer the Medi-Cal program consistent with the Medicaid Act.  The Director is
16 sued in his official capacity.  The Department is the single state agency charged with
17 the administration of California's Medicaid program, known as Medi-Cal.  *See*
18 California Welf. & Inst. Code §§ 14000 *et seq.*  The Director has an office in the
19 County of Los Angeles.

20     16.    Plaintiff CALIFORNIA HOSPITAL ASSOCIATION ("CHA") is a
21 trade association representing the interests of hospitals in the State of California.
22 CHA is incorporated in the State of California as a non-profit public benefit
23 corporation with its principal office in Sacramento, California.   CHA represents
24 nearly 450 hospitals and health systems throughout California, including general
25 acute care hospitals, children's hospitals, rural hospitals, psychiatric hospitals,
26 academic medical centers, county and other public hospitals, investor-owned
27 hospitals, and multi-hospital health systems.  These hospitals furnish vital health
28 care services to millions of our states' citizens.  CHA also represents more than 150

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  Executive, Associate and Personal members.  CHA brings this action on its own

2  behalf and in its representative capacity on behalf of its members, many of which

3  provide emergency and poststabilization services to Medi-Cal beneficiaries enrolled

4  in managed care plans with which the member hospitals do not contract and have

5  been and will continue to be directly and adversely affected by the implementation

6  of the Non-Contracted Hospital Rates, and on behalf of its members' patients.

7      17.    CHA also has associational standing to bring its claims on behalf of its

8  members and Medi-Cal beneficiaries.  The members of CHA are hospitals, many of

9  which provide emergency and poststabilization services to Medi-Cal beneficiaries

10  enrolled in managed care plans with which the hospitals do not contract.  These

11  hospital providers have suffered and will continue to suffer a concrete economic

12  injury in the form of reduced payment for emergency and poststabilization services

13  by the unlawful implementation of the Non-Contracted Hospital Rates.  In addition,

14  CHA member hospitals have been and will continue to be adversely affected by the

15  implementation of the Non-Contracted Hospital Rates because of the impact that

16  such rates have on contract negotiations between hospitals and Medi-Cal managed

17  care plans.  Medi-Cal managed care plans are frequently unwilling to pay a hospital

18  more than the Non-Contracted Hospital Rates under a contract with the hospital

19  because they would not have to pay more than such rates to the hospital without a

20  contract.  As a result, hospitals are forced either to go without a contract and obtain

21  the deficient and unlawful Non-Contracted Hospital Rates, or enter into contract for

22  these same below market rates.

23      18.    Hospitals, as medical providers, are in a unique position to advance the

24  interests of Medi-Cal beneficiaries.  CHA's hospital members have an extremely

25  close relationship with their Medi-Cal beneficiary patients who seek care from them.

26  A Medi-Cal beneficiary cannot secure medical services without his/her health care

27  providers, and without reimbursement by Medi-Cal for those services.  Hospitals are

28  better positioned and informed as to the impact of a reimbursement rate cut on the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   services they intend to, and in many instances, are required to, provide.

2       19.   Furthermore, Medi-Cal beneficiaries face economic hindrances to their

3   ability to assert their own rights in this case.

## FEDERAL MEDICAID LAW

      20.   Title XIX of the Social Security Act, 42 U.S.C. sections 1396 *et seq.*, the Medicaid Act, authorizes federal financial support to states for medical assistance to low-income persons who are aged, blind, disabled, or members of families with dependent children.[1]  The program is jointly financed by the federal and state governments and administered by the states.  The states, in accordance with federal law, decide eligible beneficiary groups, types and ranges of covered services, payment levels for services, and administrative and operative procedures. Payment for services is made directly by states to the individuals or entities that furnish the services. 42 C.F.R. § 430.0.

      21.   In order to receive matching federal financial participation, states must agree to comply with the applicable federal Medicaid law and regulations, 42 U.S.C. sections 1396 *et seq.*  Once a state has decided to participate in the Medicaid program, compliance with the federal Medicaid law and regulations is mandatory.

      22.   At the state level, the Medicaid program is administered by a single state agency, which is charged with the responsibility of establishing and complying with a state Medicaid plan (the "State Plan") that, in turn, must comply with the

---

[1] The Medicaid Act is distinguishable from the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*  The Medicare Program is a federal health insurance program for the aged, blind and disabled under which qualified health care providers, including hospitals, are reimbursed directly by the federal government for the treatment and care they provide to Medicare Program beneficiaries.  The Medicare program directly contracts with certain managed care plans to pay providers for services provided to Medicare beneficiaries.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1  provisions of the applicable federal Medicaid law.  42 U.S.C. § 1396a(a)(5) and 42

2  C.F.R. §§ 430.10 and 431.10.  The State Plan must be submitted to the Secretary of

3  the United States Department of Health and Human Services (the "Secretary") for

4  approval and must describe the policies and methods to be used to set payment rates

5  for each type of service included in the state Medicaid plan.  42 C.F.R. §§ 430.10

6  and 447.201(b).  Changes to the State Plan may not be implemented by the state

7  prior to being approved by the Secretary.

8      23.    For hospitals and certain other institutional providers, states must

9  establish rates through a public process that includes: (a) publication of proposed

10  rates, the methodologies underlying the establishment of such rates, and

11  justifications for the rates; (b) a reasonable opportunity for comment on the

12  proposed rates, methodologies and justifications by providers, beneficiaries and

13  their representatives, and other concerned State residents; and (c) publication of the

14  final rates, the methodologies underlying the establishment of such rates, and

15  justifications for such final rates.  See Section 13(A); 42 C.F.R. § 447.205.

16      24.    Each    state's Medicaid plan must "provide such methods and

17  procedures . . . relating to the utilization of, and the payment for, care and services

18  available under the plan which may be necessary . . . to assure that payments are

19  consistent with efficiency, economy, and quality of care and are sufficient to enlist

20  enough providers so that care and services are available under the plan at least to the

21  extent that such care and services are available to the general public in the

22  geographic area . . . ."  Section 30(A); 42 C.F.R. § 447.204.

23      25.    Historically, services under state Medicaid programs have been

24  provided on a "fee-for-service" basis under which the state reimburses health care

25  providers directly for covered services to Medicaid beneficiaries.

26      26.    States may also choose to contract with managed care organizations

27  ("MCOs"), such as health maintenance organizations, to provide or arrange for

28  services.  See 42 U.S.C. §1396u-2; 42, C.F.R. Part 438.  In general, through these

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1  contracts, an MCO is paid a fixed, prospective, monthly payment for each

2  beneficiary (or "member") enrolled with the entity for health coverage.  Medicaid

3  Managed Care, 67 Fed. Reg. 40989 (June 14, 2002) (to be codified at 42 C.F.R. pt.

4  438).  The capitated payment typically is payment in full for all services listed in the

5  contract between the state agency and the MCO, regardless of the level of services

6  used by each beneficiary.  In turn, the MCO assumes the financial risk of its

7  members' care and pays health service providers directly.

8      27.    Prior to 2002, states may mandate enrollment in a Medicaid MCO only

9  by establishing a mandatory managed care program through a federal "waiver" or

10  "demonstration" program established pursuant to section 1115 or section 1915(b) of

11  the Social Security Act (42 U.S.C. §§ 1315, 1396n.).  The passage of 42 U.S.C.

12  section 1396u-2 gave states the flexibility to establish mandatory managed care

13  programs for defined populations, without having to obtain specific waivers from

14  the U.S. Department of Health and Human Services, Centers for Medicare and

15  Medicaid Services ("CMS") for 42 U.S.C. sections 1396a(a)(1) [requiring that a

16  State Plan be in effect in all political subdivisions of the State], 1396a(a)(10)(B)

17  [requiring comparability of medical assistance among Medicaid beneficiaries and

18  between Medicaid beneficiaries and non-Medicaid beneficiaries], and

19  1396a(a)(23)(A) [freedom of choice].

20      28.    There has been a proliferation of mandatory Medicaid managed care

21  programs across the country in recent years.

22      29.    To deliver covered services, most MCOs contract with and establish a

23  "network" of physicians, hospitals and other in-plan medical service providers.

24  With the exception of emergency and poststabilization services, Medicaid

25  beneficiaries enrolled in a MCO are generally restricted to using in-plan, network

26  providers.

27      30.    Providers, such as hospitals, are not obligated to contract with MCOs,

28  nor are MCOs obligated to enter into contracts with any particular provider.  When

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX: (310) 551-8181

1  MCOs do contract with providers of health care services, the rates generally are set
2  through arms'-length negotiations, based on market factors.

3    31.    When a hospital enters into a written contract with a health plan, it
4  agrees to accept reimbursement that is discounted from the hospital's total billed
5  charges in exchange for the benefits of being a "contracted provider" (*i.e.*, a
6  provider with a written contract with the plan). These benefits typically include an
7  increased volume of business because the health plan identifies to its members that
8  the contracted provider is "in-network," which means that the member is able to
9  obtain services from the contracted provider. Conversely, when a hospital does not
10 have a written contract with a health plan, the hospital typically receives less
11 business from the plan, but the hospital's expectation of payment is no longer
12 constrained by any contract.

13    32.    Medicaid MCOs are required to pay for emergency services provided
14 to Medicaid beneficiaries enrolled in the relevant MCO, regardless of whether the
15 MCO has a written contract with the emergency service provider.  42 U.S.C. §
16 1396u-2(b)(2)(A).

17

18 **CALIFORNIA MEDI-CAL PROGRAM**

19    33.    The State of California has elected to participate in the Medicaid
20 program.  California has named its program "Medi-Cal." *See* Cal. Welf. & Inst.
21 Code §§ 14000 *et seq.*; 22 Cal. Code of Regs. §§ 50000 *et seq.*

22    34.    Medi-Cal healthcare payments are disbursed in two ways.  The first is a
23 "fee-for-service" process whereby the Department of Health Care Services (the
24 "Department") determines whether the healthcare services are covered and
25 furnished to an eligible beneficiary, and, if so, pays the service providers directly.

26    35.    The second is a managed care model under which the Department
27 contracts with MCOs which are responsible for the provision of care to Medi-Cal
28 beneficiaries enrolled with the MCO, and which pays healthcare providers for

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    services furnished to their members.

2

3    The Fee-For-Service Program for Inpatient Hospital Service

4        36.    Hospitals are reimbursed under the Medi-Cal fee-for-service program

5    for inpatient services in one of two ways.  Hospitals which have not entered into

6    contracts to provide inpatient hospital services under the Selective Provider

7    Contracting Program ("SPCP") are reimbursed under a cost-based reimbursement

8    system.  Under this system, hospitals are reimbursed the lowest of their reasonable

9    costs determined in accordance with Medicare cost reimbursement principles, an all-

10   inclusive rate per discharge limitation which is determined by establishing a base

11   cost per discharge for each hospital and adjusting the resulting rate annually to

12   reflect inflation and other factors, a peer group limitation which is the sixtieth

13   percentile rate per discharge of the peer group to which the hospital has been

14   assigned, or their customary charges. 22 C.C.R. §§ 51545 *et seq.*

15       37.    Under the cost-based reimbursement system, hospitals receive interim

16   payments from the Department throughout the year which are intended to be an

17   estimate of final reimbursement.   These interim payments are calculated as a

18   percentage of their charges.  Final reimbursement for a hospital's fiscal year is

19   determined well after the close of the fiscal year, after a Medi-Cal cost report is

20   submitted by the hospital and audited by the Department.  The interim payments are

21   then reconciled with the amount of the final reimbursement.

22       38.    Both interim and final payments to hospitals under the cost-based

23   reimbursement system were reduced pursuant to California Assembly Bill 5 ("AB

24   5") and Assembly Bill 1183 ("AB 1183"), passed in 2008.  AB 5 added sections

25   14105.19 and 14166.245 to the Welfare and Institutions Code.  Effective July 1,

26   2008, these provisions reduced interim payments by ten percent and limited final

27   payments to 90% of reasonable costs.

28       39.    AB 1183 amended Welfare and Institutions Code section 14166.245 to

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1    retain the limitation on reimbursement to 90% of reasonable cost and, effective

2    October 1, 2008, added a limitation on reimbursement to 95% of the average

3    contract rates under SPCP contracts, as discussed in greater detail below.  AB 1183

4    further amended Welfare and Institution Code section 14105.19 to make it

5    inoperative to services provided after February 28, 2009 and added Welfare and

6    Institutions Code section 14105.191 which, *inter alia,* modified the AB 5 reductions

7    for certain services.

8        40.    The second way hospitals are reimbursed for inpatient services under

9    the Medi-Cal fee-for-service program is through the SPCP.  In 1982, the California

10   Legislature authorized the Department to enter into contracts with selected hospitals

11   to furnish inpatient services under Medi-Cal, in accordance with the terms set forth

12   in those contracts, by enacting the SPCP.   See Cal. Welf. and Inst. Code § 14081 *et*

13   *seq*.  SPCP contracts are negotiated by the California Medical Assistance

14   Commission ("CMAC") on behalf of the Department.    The State selectively

15   contracts, on a competitive basis, with those hospitals in California that agree to be

16   reimbursed under the terms of an SPCP contract for inpatient hospital services

17   provided to Medi-Cal beneficiaries.    (This complaint will refer to hospitals that

18   contract with the Department pursuant to the SPCP as "SPCP Hospitals" and

19   hospitals that do not have SPCP contracts as "Non-SPCP Hospitals.")   SPCP

20   Hospitals are generally paid based on negotiated per diem rates for inpatient services

21   furnished by the hospital.

22       41.    A fundamental goal of the SPCP is to negotiate contract rates which

23   result in a savings to the Medi-Cal program as compared to the cost-based

24   reimbursement system, while maintaining access for Medi-Cal beneficiaries to

25   hospital services.   As a result, CMAC does not negotiate SPCP contracts to

26   reimburse a hospital's costs, regardless of how efficiently and economically

27   incurred.  Instead, CMAC negotiates rates on a market driven basis to obtain the

28   lowest rates possible for inpatient hospital services.  Payments to hospitals under

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  SPCP contracts are generally a negotiated amount per patient day. Some hospitals
2  have separate per diem rates for certain services, such as neonatal intensive care
3  services.

4  42. In addition to the per diem payments, many hospitals receive
5  significant additional funding under their SPCP contracts, in the form of
6  "supplemental payments" from, *inter alia*, the Private Hospital Supplemental Fund
7  and the Distressed Hospital Fund, and under the Construction Renovation and
8  Repair Program. *See* Cal. Welf. & Inst. Code §§ 14166.12, 14166.23, and 14085.5.
9  This additional funding is an integral and vital part of the payment made to eligible
10  hospitals.

11  43. The SPCP operates in certain "closed" Health Facility Planning Areas
12  ("HFPAs") of the state where SPCP contracts have been signed and Medi-Cal
13  beneficiaries are required to receive inpatient hospital care at a contract hospital,
14  except in emergencies and other enumerated exceptions. The SPCP does not
15  operate in "open" HFPAs. These are primarily rural areas with few hospitals where
16  the principles of competitive contracting do not apply.

17  44. The rates of payment to SPCP Hospitals remain confidential from the
18  public for three years pursuant to California Government Code section 6254(q).

19  45. As of December 1, 2007, 203 out of the State's approximately 450
20  hospitals operated under a SPCP contract with the Department, a decrease of 7
21  hospitals since December 1, 2006. Twenty-one of these 203 hospitals are
22  designated public hospitals which are reimbursed on the basis of their certified
23  public expenditures for inpatient hospital services. The hospitals that do not
24  participate in the SPCP continue to be paid under the cost-based reimbursement
25  system for Medi-Cal inpatient hospital services.

26  46. The rates paid to hospitals under the SPCP result from individual
27  negotiations and may vary widely from hospital to hospital. Many factors
28  contribute to the different varying per diem rates under the SPCP. These factors

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  include, but are not limited to, the number of hospitals in the area, the population
2  each hospital serves, the services each hospital provides, and bed availability.

3

4  Medi-Cal Managed Care

5      47.    The Department operates several managed care models under Medi-Cal
6  to provide or arrange for the provision of health care services to Medi-Cal
7  beneficiaries.  The three primary Medi-Cal managed care models are the Two-Plan
8  Model, County Organized Health Systems ("COHS"), and Geographic Managed
9  Care ("GMC") plans.  One Prepaid Health Plan ("PHP") also exists.  Each model is
10 operated pursuant to and governed by specific statutes, regulations, and contract
11 provisions.

12     48.    Generally, each of these Medi-Cal managed care plans must be licensed
13 as a health care service plan under the Knox-Keene Health Care Service Plan Act
14 (the "Knox-Keene Act") and comply with the requirements of that licensure.  Cal.
15 Health & Saf. Code §§ 1340 et seq., 22 C.C.R. §§ 53200, 53840, 53910.  However,
16 California Welfare and Institutions Code section 14087.95 exempts COHS from the
17 provisions of the Knox-Keene Act for the purpose of carrying out its Medi-Cal
18 contracts with DHCS.

19     49.    The State of California has received waivers from certain requirements
20 of the Medicaid Act pursuant to 42 U.S.C. section 1315 in order to conduct its
21 Medi-Cal managed care programs.  These waivers have included waivers of the
22 following requirements: Freedom of Choice, Statewideness, Single State Agency,
23 Comparability, Utilization Control, Contracts, and Redeterminations.  None of these
24 waivers have included waivers of Sections 30(A) or 13(A).

25

26 **LEGAL REQUIREMENTS TO PROVIDE EMERGENCY SERVICES**

27     50.    The  Emergency  Medical  Treatment  and  Active  Labor  Act
28 ("EMTALA"),  42  U.S.C.  section  1395dd,  obligates  hospitals  with  dedicated

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  emergency departments, as a condition of Medicare participation, to provide
2  emergency medical services without delay, to any and all patients who present with
3  an emergency medical condition, and to inquire about or seek payment only after the
4  patient has been stabilized.    EMTALA thus prohibits members of CHA from
5  denying emergency medical services based on the inadequacy of what will be paid
6  for emergency medical services.

7      51.    Under federal law, emergency medical conditions are defined broadly
8  and liberally under a "prudent layperson" standard.

9      52.    Under EMTALA, hospitals with dedicated emergency departments also
10  are required to treat any and all patients for treatment who present in active labor.

11      53.    CMS recently adopted a rule further requiring hospitals with
12  specialized capabilities, but lacking dedicated emergency departments, to provide
13  services to medically unstable patients transferred from other hospitals that lack the
14  capacity to provide the services required.

15      54.    Almost every general hospital in the United States participates in the
16  Medicare program including almost every CHA member hospital.

17      55.    Moreover, California state law independently requires that, as a
18  condition of licensure, "[e]mergency services and care ... be provided to any person
19  requesting the services or care, or for whom services or care is requested, for any
20  condition in which the person is in danger of loss or life, or serious injury or illness,
21  at any [hospital] that maintains and operates an emergency department . . . ." Cal.
22  Health & Saf. Code § 1317(a).    Emergency services and care must be provided
23  without consideration for the patient's ability to pay for medical services and must
24  be rendered without first questioning the patient as to his or her ability to pay for
25  services. Cal. Health & Saf. Code § 1317(b), (d).

26      56.    Services to a patient cease to be "emergency" services when the patient
27  is stable for transfer to a facility contracted with the MCO. *See, e.g.,* 42 U.S.C. §§
28  1395dd(b)(1)(A), 1395dd(e)(3); 1396u-2(b)(2)(B).

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

57.    "Post stabilization care services" is defined by federal law as "covered services, related to an emergency medical condition that are provided after an enrollee is stabilized in order to maintain the stabilized condition, or . . . to improve or resolve the enrollee's condition."    42 C.F.R. § 438.114.    "The attending emergency physician, or the provider actually treating the enrollee, is responsible for determining when that enrollee is sufficiently stabilized for transfer or discharge, and that determination is binding" on Medi-Cal managed care entities.    42 C.F.R. § 438.114(d)(3).

## FEDERAL LAWS GOVERNING PAYMENT FOR EMERGENCY AND POSTSTABILIZATION SERVICES

58.    Section 6085 of the Deficit Reduction Act ("DRA") of 2005 provides as follows:

> SEC. 6085. EMERGENCY SERVICES FURNISHED BY NON-CONTRACT PROVIDERS FOR MEDICAID MANAGED CARE ENROLLEES.
>
> (a) In General – Section 1932(b)(2) of the Social Security Act (42 U.S.C. 1396u-(b)(2)) is amended by adding at the end of the following new subparagraph:
>
> (D) EMERGENCY SERVICES FURNISHED BY NON-CONTRACT PROVIDERS – Any provider of emergency services that does not have in effect a contract with a Medicaid managed care entity that establishes payment amounts for services furnished to a beneficiary enrolled in the entity's Medicaid managed care plan must accept as payment in full the amounts (less any payments for indirect costs of medical education and direct costs of graduate medical education) that it could collect if the beneficiary received medical assistance under this title other than through enrollment in such an entity. In a state where rates paid to hospitals under the state plan are negotiated by contract and not publicly released, the payment amount applicable under this subparagraph shall be the average contract rate that would apply under the state plan for general acute care hospitals or the average contract rate that would apply under such plan for tertiary hospitals.
>
> (b) Effective Date – The amendment made by subsection (a) shall take effect on January 1, 2007.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

59.    On information and belief, section 6085 of the DRA was proposed by lobbyists engaged by Medicaid MCO(s).   On information and belief, Medicaid MCO(s) engineered the adoption of section 6085 for their financial advantage in order to avoid greater liability to Non-Contracted Hospitals.

60.    Federal law does not mandate any specific payment rate from Medicaid MCOs to Non-Contracted Hospitals for poststabilization services.  42 U.S.C. § 1396u-2(b)(2)(A)(ii) requires that a MCO comply with guidelines for Medicare managed care plans "with regard to the coordination of post-stabilization care" "in the same manner as such guidelines apply to Medicare+Choice plans" offered under the Medicare Act.[2]  (Emphasis added.)

61.    42 C.F.R. section 438.114 accordingly requires that Medicaid managed care plans cover and pay for poststabilization care "in accordance with provisions set forth at [42 C.F.R.] Sec. 422.113(c). . . .  In applying those provisions, reference to 'M+C organization' must be read as reference to the entities responsible for Medicaid payment. . . ."

62.    42 C.F.R. section 422.113(c) does not establish any specific rate of payment for poststabilization services.  42 C.F.R. section 422.113(c)(2) requires that a Medicare managed care plan maintains financial responsibility for the following poststabilization care: (1) poststabilization services that have been pre-approved by a plan provider or other plan representative consistent with 42 C.F.R. section 422.214, (2) poststabilization services that are not pre-approved but are administered to maintain the patient's stabilized condition within 1 hour of a request to the Medicare managed care plan for pre-approval of further poststabilization services,

[2]  "Medicare+Choice" or "M+C organization" is a reference to the predecessor to "Medicare Advantage," the program through which the federal Medicare program currently contracts with managed care plans to pay providers for services provided to Medicare enrollees.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1  or (3) poststabilization services that are not pre-approved but administered to

2  maintain, improve, or resolve the patient's condition if (A) the plan does not

3  respond to a request for pre-approval within 1 hour, (B) the plan cannot be contacted

4  or (C) the plan representative and the treating physician cannot reach an agreement

5  concerning the enrollee's care and a plan physician is not available for consultation.

6  The Medicare managed care plan's responsibility to pay for poststabilization

7  services that have not been pre-approved ends when: (1) a plan physician with

8  privileges at the treating hospital assumes responsibility for the care of the patient,

9  (2) a plan physician assumes responsibility for the patient by initiating transfer of

10  the patient, (3) the plan and the treating physician reach an agreement concerning

11  the patient's care or (4) the patient is discharged.

12      63.    42 C.F.R. section 422.214 establishes that, in general, payments from

13  Medicare managed care plans to non-contracted providers must be made at the

14  amounts that would be made in full for a fee-for-service Medicare enrollee, less any

15  pass-through payments made for managed care enrollees.  In other words, Medicare

16  managed care plans are required to pay Non-Contracted Hospitals for pre-authorized

17  services the amounts those providers would be paid by the Medicare fee-for-service

18  program.    This payment standard is inapplicable to poststabilization services

19  provided within 1 hour of the hospital notifying a Medicare managed care plan of

20  stabilization or if (A) the plan does not respond to a request for pre-approval within

21  1 hour, (B) the plan cannot be contacted or (C) the plan representative and the

22  treating physician cannot reach an agreement concerning the enrollee's care and a

23  plan physician is not available for consultation.

24      64.    The requirement in 42 C.F.R. section 438.114 that Medicaid MCOs

25  cover and pay for poststabilization care "in accordance with" 42 C.F.R. section

26  422.113(c) establishes the scope of a Medicaid managed care plan's financial

27  responsibility to pay for poststabilization care, i.e., the situations in which the

28  Medicaid managed care plan becomes financially liable for poststabilization care

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA, 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  and the events which terminate the plan's financial liability for poststabilization

2  care. 42 C.F.R. section 438.114's reference to 42 C.F.R. section 422.113(c) does

3  not mandate any specific payment rate.

4       65.   On information and belief, no court has interpreted federal law to

5  establish any specific payment rate for Medicaid managed care plans to non-

6  contracted providers of poststabilization services following an inpatient emergency

7  stay.   Further, on information and belief, CMS also does not interpret its own

8  regulations to establish any specific payment rate for Medicaid managed care plans

9  to non-contracted providers of poststabilization services following an inpatient

10  emergency stay.

11       66.   If 42 C.F.R. section 438.114's reference to 42 C.F.R. section

12  422.113(c) was intended to establish any specific payment rate from Medicaid

13  managed care plans to providers for pre-approved poststabilization services, that

14  rate would be the Medicare fee-for-service rate.   42 U.S.C. section 1396u-

15  2(b)(2)(A)(ii); *see also* Medicaid Managed Care, 67 Fed. Reg. 40989 (June 14,

16  2002) (to be codified at 42 C.F.R. pt. 438) ("the [poststabilization] services that

17  must be covered are those that must be covered under Medicare rules . . . in the

18  same manner as these rules apply to [Medicare] plans. . . .").

19

20  **CALIFORNIA STATUTES GOVERNING PAYMENT FOR NON-**

21  **CONTRACTED SERVICES BY HEALTH CARE SERVICE PLANS**

22       67.   Most Medi-Cal managed care plans are also governed by the Knox-

23  Keene Act, which is administered by the California Department of Managed Health

24  Care ("DMHC").

25       68.   DMHC regulations require that a health care service plan pay a non-

26  contracted provider "the reasonable and customary value for the health care services

27  rendered based upon statistically credible information that is updated at least

28  annually and takes into consideration: (i) the provider's training, qualifications, and

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) any unusual circumstances in the case...." Tit. 28, Cal. Code Regs., § 1300.71(a)(3). This standard applies to any services provided by a non-contracted provider, regardless of whether the services are classified as "emergency services" or not.

69.    This standard matches the requirement in Health and Safety Code section 1317.2a(d), which requires that third-party payors, including health care service plans, be liable for the "reasonable charges" to a transferring hospital for emergency services.

70.    California law also requires most Medi-Cal managed care plans to take responsibility for initiating transfer of patients who arrive through emergency rooms at non-contracted hospital as soon as possible after stabilization. Cal. Health and Safety Code § 1371.4; Title 28, C.C.R. §§1300.71.4(b)(3), (c). In situations in which the managed care plan fails to transfer the patient, hospitals provide poststabilization services in order to improve or resolve the patient's condition.

**CALIFORNIA'S INVALID ATTEMPTS TO REGULATE PAYMENTS FROM MEDI-CAL MANAGED CARE PLANS TO NON-CONTRACTED PROVIDERS OF EMERGENCY AND POSTSTABILIZATION SERVICES**

71.    On March 16, 2007, the Department issued All Plan Letter 07-003 ("APL 07-003"). APL 07-003 announced that in California, the applicable rates under section 6085 of the DRA were as follows:

> For out-of-plan/network general acute care hospitals, the applicable payment amount for emergency inpatient services is the average Selective Provider Contracting Program (SPCP) contract rate for general acute care hospitals. For out-of-plan/network tertiary care hospitals, the applicable payment amount for emergency inpatient

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

services is the average SPCP contract rate for tertiary hospitals.

However, because the Department determined that it would need further clarification from CMS before "develop[ing]" rates of payment pursuant to section 6085, it "encourage[d]" Medi-Cal managed care plans to pay Non-Contracted Hospitals for emergency services according to average SPCP rates published in an Annual Report to the Legislature prepared by CMAC. The Department announced that "[o]nce the final rates are published, the managed care plans may be required to do a reconciliation process to ensure that all out-of-plan/network providers of emergency services, who were paid on a transition basis the [published rate in the CMAC Annual Report to the Legislature], have been reimbursed in accordance with" the rates set by the Department. Due to the issuance of this letter, neither Medi-Cal managed care plans nor Non-Contracted Hospitals could reasonably have expected the then-published average SPCP to be the final payment rates.

72.    On September 18, 2008, after a protracted budget stalemate, Governor Schwarzenegger signed Assembly Bill 1183 ("AB 1183"), the budget trailer bill for fiscal year 2008-09. A true and correct copy of pertinent sections of AB 1183 is attached hereto and incorporated herein as Exhibit A.

73.    AB 1183 was introduced originally in February 2007 as a bill concerning hazardous materials. In September 2008, the Senate Committee on Budget took over AB 1183 and amended it by eliminating the provisions concerning hazardous materials and replacing them with budget trailer bill language, including the Non-Contracted Hospital Rates at issue in this case. Prior to these amendments passed in committee on September 15, 2008, the general public had never seen these proposed rates. The amended version of the bill was passed the very next day, September 16, 2008, by both the Senate and the Assembly. The bill went to the Governor's office for signature just four days later and ultimately was executed on September 30, 2008.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

74.   AB 1183 amended Welfare and Institutions Code section 14166.245. Section 14166.245 as amended by AB 1183 limits Medi-Cal payments to Non-SPCP Hospitals for inpatient hospital services as follows effective October 1, 2008:

a.   For most Non-SPCP Hospitals, interim payments for inpatient hospital services are the lesser of 90% of the interim rate or 95% of an "average regional per diem contract rate."   Final reimbursement is limited to the lesser of 90% of the hospital's audited allowable cost per day or 95% of an "average regional per diem contract rate."

b.   "Small and rural hospitals" are exempted from these limitations altogether, except that they are subject to the 10% reduction to their interim rates and to their final reimbursement until November 1, 2008.

c.   Certain hospitals in open HFPAs are subject only to the 10% rate reductions and not the "average regional per diem contract rate" limitations.

75.   Welfare and Institutions Code section 14166.245 mandated that the "average regional per diem contract rates" be calculated as follows:

> (C)(i) For purposes of this subdivision and subdivision (c), the average regional per diem contract rates shall be derived from unweighted average contract per diem rates that are publicly available on June 1 of each year, trended forward based on the trends in the California Medical Assistance Commission's Annual Report to the Legislature. For tertiary hospitals, and for all other hospitals, the regional average per diem contract rates shall be based on the geographic regions in the California Medical Assistance Commission's Annual Report to the Legislature. The applicable average regional per diem contract rates for tertiary hospitals and for all other hospitals shall be published by the department on or before October 1, 2008, and these rates shall be updated annually for each state fiscal year and shall become effective each July 1, thereafter. Supplemental payments shall not be included in this calculation.

> (ii) For purposes of clause (i), both the federal and nonfederal share of the designated public hospital cost-based rates shall be included in the determination of the average contract rates by multiplying the hospital's interim rate, established pursuant to Section 14166.4 and that is in effect on June 1 of each year, by two.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

(iii) For the purposes of this section, a tertiary hospital is a children's hospital specified in Section 10727, or a hospital that has been designated as a Level I or Level II trauma center by the Emergency Medical Services Authority established pursuant to Section 1797.1 of the Health and Safety Code.

76.  On April 6, 2009, the Ninth Circuit Court of Appeal, in *California Pharmacists Association v. Maxwell-Jolly*, __ F.3d __, 2009 WL 975458 (9th Cir. 2009), stayed the application of various hospital reimbursement reductions enacted by AB 1183, including the reimbursement reductions in Welfare and Institutions Code section 14166.245, pending the appeal of the trial court's denial of a preliminary injunction.  The Ninth Circuit concluded that the plaintiff hospitals and CHA had demonstrated a likelihood of success on the merits of their challenge to the AB 1183 rate reductions on the basis that the rate reductions were preempted by Section 30(A) and that the plaintiffs had established a likelihood of irreparable harm in the form of reduced payments that could not later be recovered in federal court due to the Eleventh Amendment.

77.  AB 1183 also enacted California Welfare and Institutions Code section 14091.3, which states, in relevant part:

(c) Any hospital that does not have in effect a contract with a Medi-Cal managed care health plan. . . shall accept as payment in full, from all these plans, the following amounts:

(1) For outpatient services, the Medi-Cal Fee-For-Service (FFS) payment amounts.

(2) For emergency inpatient services, the average per diem contract rate specified in paragraph (2) of subdivision (b) of Section 14166.245, except that the payment amount shall not be reduced by 5 percent. For the purposes of this paragraph, this payment amount shall apply to all hospitals, including hospitals that contract with the department under the Medi-Cal Selective Provider Contracting Program described in Article 2.7 (commencing with Section 14081), and small and rural hospitals specified in Section 124840 of the Health and Safety Code.

(3) For poststabilization services following an emergency admission, payment amounts shall be consistent with

1    subdivision (e) of Section 438.114 of Title 42 of the Code
     of Federal Regulations. This paragraph shall only be
2    implemented to the extent that contract amendment
     language providing for these payments is approved by
3    CMS. For purposes of this paragraph, this payment
     amount shall apply to all hospitals, including hospitals that
4    contract with the department under the Medi-Cal Selective
     Provider Contracting Program pursuant to Article 2.6
5    (commencing with Section 14081).

6    78.    On October 2, 2008, the Department issued another All Plan Letter

7    ("APL 08-008") regarding "Reimbursement for Non-Contracted Hospital

8    Emergency Inpatient Services." APL 08-008 announced the applicable two sets of

9    "average regional per diem contract rates," one for January 1, 2007 to June 30, 2008

10    and one for July 1, 2008 to June 30, 2009. A true and correct copy of APL 08-008

11    is attached hereto and incorporated herein as Exhibit B.

12    79.    On November 10, 2008, the Department issued a third All Plan Letter

13    ("APL 08-010) regarding "Hospital Payment for Medi-Cal Post-Stabilization

14    Services." In that letter, the Department announced that California Welfare and

15    Institutions Code section 14091.3(c)(3) requires that non-contracted providers of

16    poststabilization services "accept as payment in full for post-stabilization services

17    the hospital's Medi-Cal Fee-For-Service (FFS) payment amounts for general acute

18    care inpatient service set forth in W&I Code Section 14166.245." (Emphasis

19    removed.) These are the payment rates that were enjoined by the Ninth Circuit in

20    *California Pharmacists Association v. Maxwell-Jolly*. A true and correct copy of

21    APL 08-010 is attached hereto and incorporated herein as Exhibit C.

22    80.    Plaintiffs are informed and believe and thereon allege that, like the

23    Director's failures enjoined in *Independent Living Centers of Southern California, et*

24    *al. v. Shewry*, 543 F.3d 1050 (9th Cir. 2008) and *California Pharmacists*

25    *Association v. Maxwell-Jolly*, prior to enacting the Non-Contracted Hospital Rates

26    in AB 1183, or implementing these rates pursuant to APL 08-008 and APL 08-010,

27    no studies or other analyses were conducted by the Legislature or by the Director to

28    determine whether the Non-Contracted Hospital Rates would be consistent with

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    efficiency, economy and quality of care or with the costs of providing the services to

2    which these rates apply.

3

4    **CALIFORNIA LEGISLATURE'S REGULATION OF**

5    **POSTSTABILIZATION SERVICES AFTER AB 1183**

6        81.    On September 30, 2008, the Legislature enacted Assembly Bill 1203

7    ("AB 1203").  AB 1203 enacted significant changes to the responsibilities of health

8    plans licensed pursuant to the Knox-Keene Act and Non-Contracted Hospitals with

9    regard to post-stabilization care.

10        82.    AB 1203 amended California Health and Safety Code section 1262.8 to

11    require that if a hospital is able to obtain the name and contact information of a

12    patient's health care service plan (after seeking to do so as required by the section),

13    the hospital must contact the plan or the plan's contracting medical provider for

14    authorization to provide poststabilization care.    Cal. Health & Saf. Code §

15    1262.8(b).

16        83.    The plan must within thirty minutes either approve the post-

17    stabilization services or decide to transfer the patient.  Cal. Health & Saf. Code §

18    1371.4(j).

19        84.    If the plan does not notify the hospital of its decision to either approve

20    post-stabilization services or transfer the patient, Health and Safety Code section

21    1268.2(d)(2) requires that the plan "shall pay <u>charges</u> for the care...."  (Emphasis

22    added.)    Likewise, if a plan decides to transfer a patient but fails to transfer the

23    patient "within a reasonable time[,]" the plan is liable to pay "<u>charges</u>" for the care.

24    Cal. Health & Saf. Code § 1268.2(d)(3) (emphasis added).

25        85.    Nothing in AB 1203 exempts Medi-Cal managed care plans licensed by

26    the Department of Managed Health Care from its requirements.

27

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

**DEFENDANT'S VIOLATIONS OF LAW**

86.  Violation of Federal Statute: The Non-Contracted Hospital Rates are invalid and may not lawfully be implemented because they violate federal Medicaid law, and are therefore preempted by the Supremacy Clause, because:

a.  The Non-Contracted Hospital Rates violate Section 30(A) because:

i.  Neither the Director nor the Legislature considered the factors of efficiency, economy, quality of care, and access to services prior to enacting the AB 1183 Non-Contracted Hospital Rates;

ii.  Neither the Director nor the Legislature demonstrated a reasonable connection between Non-Contracted Hospital Rates and the efficient and economical provision of quality care, or ensuring access to services, prior to enacting the Non-Contracted Hospital Rates;

iii.  Neither the Legislature nor the Director considered the costs of providing quality care, relied on credible cost studies in enacting the Non-Contracted Hospital Rates, or demonstrated a reasonable connection between Medi-Cal rates as affected by the Non-Contracted Hospital Rates and provider costs;

iv.  The Non-Contracted Hospital Rates are not consistent with efficiency, economy, and quality of care, and do not ensure that Medi-Cal beneficiaries have equal access to services; and/or

v.  The Non-Contracted Hospital Rates are not reasonably related to hospital costs of providing the services subject to these rates. The SPCP contract rates from which the Non-Contracted Hospital Rates were derived are not based on hospital costs, were not intended to cover the costs of efficient and economical hospitals and were intended to be and are less than hospital costs so that the California Medical Assistance Commission could show annually that the SPCP saved the Medi-Cal program money as compared to the reimbursement that would have been paid under the Medi-Cal program's reasonable cost reimbursement methodology. The use of statewide average SPCP contract rates to determine the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   Non-Contracted Hospital Rates is not consistent with efficiency, economy and
2   quality of care, and results in rates that are not reasonably related to hospital costs
3   because, inter alia, the rates do not take into account various factors that affect
4   hospital costs, such as differences among hospitals in the types of cases (or case
5   mix) they treat; differences among hospitals in the types of patients (or patient mix)
6   they treat; differences between the average cost of treating patients under SPCP
7   contracts and the patients treated on out-of-network bases under Medi-Cal managed
8   care, which include primarily patients initially seen on an emergency basis; and
9   regional variances in salaries and other cost inputs.

10          b.      The Non-Contracted Hospital Rates violate Section 13(A) because they
11  were not adopted through a public process as required by this provision.    For
12  example:

13          i.      The proposed Non-Contract Hospital Rates, the methodologies
14  underlying the establishment of these rates and the justifications for the rates were
15  never published;

16          ii.     Providers, beneficiaries, and their representatives and other
17  concerned residents of the State of California were never given a reasonable
18  opportunity to review and comment on the proposed rates, methodologies and
19  justifications;

20          iii.    The final Non-Contract Hospital Rates, the methodologies
21  underlying the establishment of these rates and the justifications for the rates were
22  never published; and/or

23          iv.     The Non-Contract Hospital Rates do not take into account the
24  situation of hospitals which serve a disproportionate number of low-income patients
25  with special needs;

26          c.      The Non-Contracted Hospital Emergency Rates violate 42 U.S.C.
27  section 1396u-2(b) because:

28          i.      42 U.S.C. section 1396u-2(b)(2)(D) requires payment from

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  Medi-Cal managed care plans at an "average contract rate," which encompasses all
2  payments from California to a hospital under the hospital's SPCP contract. The
3  Director did not include certain payments made to hospitals for inpatient services
4  under the hospitals' SPCP contracts in computing the Non-Contracted Hospital
5  Emergency Rates, including supplemental payments paid to hospitals as part of their
6  SPCP contracts; and/or

7          ii.    42 U.S.C. section 1396u-2(b)(2)(D) is intended to require
8  payments to Non-Contract Hospitals for emergency services to approximate the
9  amounts that hospitals would have been paid under the fee-for-service program.
10 The Non-Contracted Hospital Emergency Rates fail to accurately reflect the
11 payments under the fee-for-service program because the Director calculated the
12 Non-Contracted Hospital Emergency Rates without taking into account the
13 differences in Medi-Cal volume between facilities with SPCP contracts. In other
14 words, the Non-Contracted Hospital Emergency Rates are preempted by 42 U.S.C.
15 section 1396u-2(b)(2)(D) because they are calculated as an "unweighted" or
16 "straight" average of SPCP contract rates, rather than an average weighted based on
17 the volume of Medi-Cal inpatient services furnished by each SPCP contracted
18 hospital; and/or

19         iii.   The Non-Contracted Hospital Poststabilization Rates violate 42
20 U.S.C. section 1396u-2(b)(2)(A)(ii) because inasmuch as they attempt to establish
21 poststabilization rates in compliance with federal law, they do not require that Medi-
22 Cal managed care plans comply with guidelines for Medicare managed care plans
23 with regard to poststabilization care "in the same manner as such guidelines apply"
24 to Medicare managed care plans.

25         87.    Violation of Federal Regulations:  The Non-Contracted Hospital Rates
26 are invalid and may not lawfully be implemented because they violate federal
27 Medicaid regulations, and are therefore preempted by the Supremacy Clause,
28 because:

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1       a.      The Non-Contracted Hospital Rates violate 42 C.F.R. section 447.205

2  because the Department failed to give public notice as required by this provision as

3  follows:

4               i.      Public notice is required because the Non-Contracted Hospital

5  Rates are a significant change in the Department's methods and standard for setting

6  payment rates for Non-Contracted Hospital services;

7               ii.     The Department failed to provide public notice describing the

8  proposed change in method and standards, giving an estimate of of any increase or

9  decrease in annual aggregate expenditures, explaining why the agency was changing

10 its methods and standards, identifying a local agency in each county where copies of

11 the proposed changes were available for review, giving an address where written

12 comments may be sent and reviewed by the public, and giving the location, date and

13 time of any public hearings; and

14              iii.    No prior notice was ever published as a public announcement in

15 a suitable publication as defined in 42 C.F.R. § 447.205(d)(2); and/or

16      b.      The Non-Contracted Hospital Poststabilization Rates violate 42 C.F.R.

17 section 438.114 because, if and to the extent this regulation establishes any rate of

18 payment to Non-Contracted Hospitals for poststabilization services, it requires

19 payment for poststabilization services at the Medicare fee-for-service rates, and the

20 Non-Contracted Hospital Poststabilization Rates are generally lower than the

21 Medicare fee-for-service rates.

22      88.     No State Plan Amendment: The Non-Contracted Hospital Rates are

23 invalid and may not lawfully be implemented because they are inconsistent with and

24 violate the State Plan, including, but not limited to, Attachment 4.19-A of the State

25 Plan as to hospital inpatient services.   The Non-Contracted Hospital Rates are

26 therefore preempted by the Supremacy Clause.  The Director may not lawfully

27 implement the AB 1183 Rate Reductions unless and until he obtains federal

28 approval of the necessary amendments to the State Plan from the federal

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  government.  Plaintiffs are informed and believe, and thereon allege, that the
2  Director has not obtained federal approval of a State Plan Amendment for the Non-
3  Contracted Hospital Rates.

4  89.  <u>Violation of U.S. and California Constitution:</u> The Non-Contracted
5  Hospital Rates violate the Fifth Amendment of the U.S. Constitution and Article I,
6  section 19 of the California Constitution by effectuating a taking of the property of
7  hospitals to Medi-Cal managed care plans without any public use or purpose. In this
8  regard:

9  a.  The Non-Contracted Hospital Rates force Plaintiff and its members to
10  absorb losses and thereby directly subsidize privately owned and operated Medi-Cal
11  managed care plans;

12  b.  Given the prevailing capitation payment arrangements with the
13  Department, the Medi-Cal managed care plans are the sole, direct and substantial
14  beneficiaries of the Non-Contracted Hospital Rates;

15  c.  No public purpose for the Non-Contracted Hospital Rates was
16  enunciated in section 6085 of the Deficit Reduction Act, Assembly Bill 1183 or any
17  of the Department's All Plan Letters;

18  d.  Any public benefit that might result from plaintiff's members accepting
19  the Non-Contracted Hospital Rates is, at best, indirect, incidental, and attenuated;
20  and/or

21  e.  The Non-Contracted Hospital Rates were enacted at the instance and
22  for the pecuniary benefit of the managed care industry as a means of enhancing the
23  profitability of private managed care plans; any intended or alleged public benefit is
24  pretextual.

25  90.  <u>Violation of State Law:</u>

26  a.  The Non-Contracted Hospital Poststabilization Rates violate Welfare
27  and Institutions Code section 14091.3(c)(3) because the Non-Contracted Hospital
28  Poststabilization Rates are not consistent with 42 C.F.R. section 438.114(e) as

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    required by section 14091.3(c)(3).   To the extent 42 C.F.R. section 438.114(e)

2    specifies a payment rate, it specifies a payment rate equal to the amount that would

3    have been paid on a fee-for-service basis under the Medicare program through its

4    references to various Medicare regulations.   The Non-Contracted Hospital

5    Poststabilization Rates are generally lower than the Medicare fee-for-service rates;

6          b.    To the extent that 42 C.F.R. section 438.114(e) does not specify a rate

7    of payment, the Non-Contracted Hospital Poststabilization Rates are invalid because

8    they result from an invalid delegation of legislative authority to the Department and

9    the Director pursuant to Welfare and Institutions Code section 14091.3(c), as the

10   Department and the Director are provided no standards whatsoever by the

11   legislature for the development of Non-Contracted Hospital Poststabilization Rates.

12   This delegation without standards violates the California Constitution by

13   impermissibly authorizing the executive branch of state government to assume

14   legislative functions which are the exclusive province of the state legislature;

15         c.    The Non-Contracted Hospital Rates are invalid as underground

16   rulemaking without compliance with the procedural requirements of the California

17   Administrative Procedure Act, Government Code sections 11340, *et seq.*   The Non-

18   Contracted Hospital Rates constitute regulations under California law because they

19   are rules of general application.   However, they were implemented pursuant to APL

20   08-008 and APL 08-010, neither of which was adopted in accordance with the

21   California Administrative Procedure Act;

22         d.    The Non-Contracted Hospital Rates are invalid because they conflict

23   with the "reasonable and customary" payment standard of Title 28, California Code

24   of Regulations, section 1300.71(a)(3);

25         e.    The Non-Contracted Hospital Poststabilization Rates are invalid

26   because they attempt to establish a lower rate of payment for poststabilization

27   services that is almost always lower than hospital charges in direct contradiction of

28   the statutory requirement in AB 1203 that a plan pay charges for care if it does not

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   notify the hospital of its decision to either approve post-stabilization services or

2   transfer the patient or if a plan decides to transfer a patient but fails to transfer the

3   patient "within a reasonable time;"

4        f.     The Non-Contracted Hospital Rates are invalid because they attempt to

5   establish a lower rate of payment for emergency services than those required by

6   California Health and Safety Code section 1317.2a(d); and/or

7        g.     The Non-Contracted Hospital Rates are invalid because they violate

8   Title 22, California Code of Regulations, section 50004, by establishing rates that

9   are inconsistent with and violate the State Plan which currently does not include the

10  Non-Contractual Hospital Rates.

11

12  **FIRST CAUSE OF ACTION**

13  **(VIOLATION OF 42 U.S.C. § 1396a(a)(30)(A)/SUPREMACY CLAUSE)**

14       91.     Plaintiff hereby incorporates by reference paragraphs 1 through 90,

15  inclusive, as though fully set forth herein.

16       92.     The Non-Contracted Hospital Rates violate Section 30(A) of the

17  Medicaid Act because:

18       a.     Neither the Director nor the Legislature considered the factors of

19  efficiency, economy, quality of care, and access to services prior to enacting the

20  Non-Contracted Hospital Rates;

21       b.     Neither the Director nor the Legislature demonstrated a reasonable

22  connection between the Non-Contracted Hospital Rates and the provision of quality

23  care in an efficient and economic manner, or ensuring access to services, prior to

24  enacting the Non-Contracted Hospital Rates; and

25       c.     Neither the Legislature nor the Director considered the costs of

26  providing quality care or demonstrated a reasonable connection between Medi-Cal

27  rates as affected by the Non-Contracted Hospital Rates and provider costs.

28       d.     The Non-Contracted Hospital Rates are not consistent with efficiency,

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1  economy, and quality of care, and do not ensure that Medi-Cal beneficiaries have

2  equal access to services; and/or

3      e.    The Non-Contracted Hospital Rates are not reasonably related to

4  hospital costs of providing the services subject to these rates.

5      93.    The Non-Contracted Hospital Rates and the provisions of California

6  law pursuant to which they have been implemented are thus preempted by the

7  Supremacy Clause of the United States Constitution, art. IV, because the mandated

8  rates, enacted solely for the benefit of Medi-Cal managed care plans in disregard of

9  the Section 30(A) statutory factors, stand as an obstacle to the accomplishment and

10  execution of the full purposes and objectives of Congress in the enactment of said

11  Section.  Moreover, the Non-Contracted Hospital rates are preempted under the

12  Supremacy Clause because the Director cannot simultaneously comply with the

13  provisions of California law requiring the implementation of the Non-Contracted

14  Hospital Rates and Section 30(A).

15

16  **SECOND CAUSE OF ACTION**

17  **(VIOLATION OF 42 U.S.C. § 1396a(a)(13)(A)**

18  **SUPREMACY CLAUSE/42 U.S.C. § 1983)**

19      94.    Plaintiff hereby incorporates by reference paragraphs 1 through 93,

20  inclusive, as though fully set forth herein.

21      95.    The Non-Contracted Hospital Rates violate Section 13(A) because they

22  were not adopted through a public process as required by this provision.

23      96.    Specifically, the Non-Contracted Hospital Rates were not enacted in

24  accordance with Section 13(A) because:

25      a.    The proposed Non-Contract Hospital Rates, the methodologies

26  underlying the establishment of these rates and the justifications for the rates were

27  never published;

28      b.    Providers, beneficiaries, and their representatives and other concerned

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1  residents of the State of California were never given a reasonable opportunity to
2  review and comment on the proposed rates, methodologies and justifications;

3          c.      The final Non-Contract Hospital Rates, the methodologies underlying
4  the establishment of these rates and the justifications for the rates were never
5  published; and/or

6          d.      The Non-Contract Hospital Rates do not take into account the situation
7  of hospitals which serve a disproportionate number of low-income patients with
8  special needs; and/or

9          97.     The Non-Contracted Hospital Rates have been adopted by the
10 Department under color of state law.  CHA represents the interests of hospitals that
11 have been deprived of their privately enforceable rights conferred by 42 U.S.C.
12 section 1396a(a)(13)(A).  Accordingly, the Director has violated 42 U.S.C. section
13 1983 by adopting the Non-Contracted Hospital Rates.

14         98.     The Non-Contracted Hospital Rates are also preempted by the
15 Supremacy Clause of the United States Constitution, art. IV.  Moreover, the Non-
16 Contracted Hospital rates are preempted under the Supremacy Clause because the
17 Director cannot simultaneously comply with the provisions of California law
18 requiring the implementation of the Non-Contracted Hospital Rates and Section
19 13(A).

20

21 **THIRD CAUSE OF ACTION**
22 **(VIOLATION OF 42 U.S.C. § 1396u-2(b)**
23 **SUPREMACY CLAUSE/42 U.S.C. § 1983)**
24         99.     Plaintiff hereby incorporates by reference paragraphs 1 through 99,
25 inclusive, as though fully set forth herein.

26         100.    The Non-Contracted Hospital Emergency Rates violate 42 U.S.C.
27 section 1396u-2(b)(2)(D) because they fail to include all the payments to hospitals
28 pursuant to their SPCP contracts by excluding supplemental payments to hospitals.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

34
COMPLAINT

101. The Non-Contracted Hospital Emergency Rates further violate 42 U.S.C. section 1396u-2(b)(2)(D) because they fail to accurately reflect the amounts hospitals would have been paid from the Medi-Cal fee-for-service program by calculating the average contract amounts as a straight, unweighted average.

102. The Non-Contracted Hospital Poststabilization Rates violate 42 U.S.C. section 1396u-2(b)(2)(A)(ii) because inasmuch as they attempt to establish poststabilization rates in compliance with federal law, they do not require that Medi-Cal managed care plans comply with guidelines for Medicare managed care plans with regard to poststabilization care "in the same manner as such guidelines apply" to Medicare managed care plans.

103. The Non-Contracted Hospital Rates have been adopted by the Department under color of state law.  CHA represents the interests of hospitals that have been deprived of their privately enforceable rights conferred by 42 U.S.C. section 1396u-2(b)(2).  Accordingly, the Director has violated 42 U.S.C. section 1983 by adopting the Non-Contracted Hospital Rates.

104. The Non-Contracted Hospital Rates are also preempted by the Supremacy Clause of the United States Constitution, art. IV.  Moreover, the Non-Contracted rates are preempted under the Supremacy Clause because the Director cannot simultaneously comply with the provisions of California law requiring the implementation of the Non-Contracted Hospital Rates and 42 U.S.C. sections 1396u-2(b)(2)(D) and 1396u-2(b)(2)(A)(ii).

## FOURTH CAUSE OF ACTION

### (VIOLATION OF 42 C.F.R. § 447.205/SUPREMACY CLAUSE)

105. Plaintiff hereby incorporates by reference paragraphs 1 through 105, inclusive, as though fully set forth herein.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1    106.  The Non-Contracted Hospital Rates violate 42 C.F.R. section 447.205

2    because the Department failed to give public notice as required by this provision as

3    follows:

4        a.    Public notice is required because the Non-Contracted Hospital Rates

5    are a significant change in the Department's methods and standard for setting

6    payment rates for Non-Contracted Hospital services;

7        b.    The Department failed to provide public notice describing the proposed

8    change in method and standards, giving an estimate of of any increase or decrease in

9    annual aggregate expenditures, explaining why the agency was changing its

10   methods and standards, identifying a local agency in each county where copies of

11   the proposed changes were available for review, giving an address where written

12   comments may be sent and reviewed by the public, and giving the location, date and

13   time of any public hearings; and

14       c.    No prior notice was ever published as a public announcement in a

15   suitable publication as defined in 42 C.F.R. §447.205(d)(2).

16

17   **FIFTH CAUSE OF ACTION**

18   **(VIOLATION OF 42 C.F.R. § 438.114/SUPREMACY CLAUSE)**

19   107.  Plaintiff hereby incorporates by reference paragraphs 1 through 106,

20   inclusive, as though fully set forth herein.

21   108.  The Non-Contracted Hospital Poststabilization Rates are invalid and

22   may not lawfully be implemented because they are inconsistent with 42 C.F.R.

23   section 438.114 because if that regulation establishes any rate of payment for pre-

24   approved poststabilization services, that rate would be equal to the Medicare fee-for-

25   service rate.

26   109.  The Non-Contracted Hospital Poststabilization Rates are thus

27   preempted by the Supremacy Clause of the United States Constitution, art. IV.

28   Moreover, the Non-Contracted Hospital Poststabilization Rates are preempted under

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1  the Supremacy Clause because the Director cannot simultaneously comply with the

2  provisions of California law requiring the implementation of the Non-Contracted

3  Hospital Emergency Rates and 42 C.F.R. section 438.114.

4

5  **SIXTH CAUSE OF ACTION**

6  **(FAILURE TO AMEND STATE PLAN/SUPREMACY CLAUSE)**

7       110.   Plaintiff hereby incorporates by reference paragraphs 1 through 109,

8  inclusive, as though fully set forth herein.

9       111.   The Director may not lawfully implement the Non-Contracted Hospital

10 Rates because they are inconsistent with and violate the State Plan unless and until it

11 obtains federal approval of the necessary amendments to the State Plan to the

12 federal government.

13      112.   The Non-Contracted Hospital Rates are thus preempted by the

14 Supremacy Clause of the United States Constitution, art. IV.  Moreover, the Non-

15 Contracted Hospital rates are preempted under the Supremacy Clause because the

16 Director cannot simultaneously comply with the provisions of California law

17 requiring the implementation of the Non-Contracted Hospital Rates and the State

18 Plan.

19

20 **SEVENTH CAUSE OF ACTION**

21 **(VIOLATION OF U.S. CONSTITUTION TAKINGS CLAUSE**

22 **SUPREMACY CLAUSE/42 U.S.C. § 1983)**

23      113.   Plaintiff hereby incorporates by reference paragraphs 1 through 112,

24 inclusive, as though fully set forth herein.

25      114.   The takings clause of the Fifth Amendment to the U.S. Constitution

26 prohibits the taking of "private property" by the government "without just

27 compensation."

28      115.   Takings are not limited to outright seizures or condemnations of

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 physical property, but may include the forced diminution in the value of private
2 property resulting from governmental regulation of the use of private business or
3 property.

4      116.   The "public use" clause of the Fifth Amendment permits any taking of
5 private property only for a public purpose.

6      117.   The takings affected by the Non-Contracted Hospital Rates are not for a
7 public purpose. In this regard:

8      a.     The Non-Contracted Hospital Rates force Plaintiff and its members to
9 absorb losses and thereby directly subsidize privately owned and operated Medi-Cal
10 managed care plans;

11      b.     Given the prevailing capitation payment arrangements with the
12 Department, the Medi-Cal managed care plans are the sole, direct and substantial
13 beneficiaries of the Non-Contracted Hospital Rates;

14      c.     No public purpose for the Non-Contracted Hospital Rates was
15 enunciated in section 6085 of the Deficit Reduction Act, Assembly Bill 1183 or any
16 of the Department's All Plan Letters;

17      d.     Any public benefit that might result from plaintiff's members accepting
18 the Non-Contracted Hospital Rates is, at best, indirect, incidental, and attenuated;

19      e.     The Non-Contracted Hospital Rates were enacted at the instance and
20 for the pecuniary benefit of the managed care industry as a means of enhancing the
21 profitability of private managed care plans; any intended or alleged public benefit is
22 pretextual.

23      118.   Accordingly, the takings effectuated by the Non-Contracted Hospital
24 Rates are *per se* unconstitutional takings.

25      119.   The Non-Contracted Hospital Rates have been adopted by the
26 Department under color of state law. CHA represents the interests of hospitals that
27 have been deprived of their privately enforceable right to be free of unlawful takings
28 guaranteed under the U.S. Constitution. Accordingly, the Director has violated 42

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  U.S.C. section 1983 by adopting the Non-Contracted Hospital Rates.

2      120.  Also, the Non-Contracted Hospital Rates are preempted by the

3  Supremacy Clause of the United States Constitution, art. IV.  Moreover, the Non-

4  Contracted Hospital rates are preempted under the Supremacy Clause because the

5  Director cannot simultaneously comply with the provisions of California law

6  requiring the implementation of the Non-Contracted Hospital Rates and the

7  Constitutional prohibition of takings without a public use.

8

9

10  **EIGHTH CAUSE OF ACTION**

11  **(PETITION FOR WRIT OF MANDATE**

12  **CALIFORNIA CODE OF CIVIL PROCEDURE § 1085)**

13      121.  Plaintiff hereby incorporates by reference paragraphs 1 through 120,

14  inclusive, as though fully set forth herein.

15      122.  Plaintiff has a beneficial interest that rates established for non-contract

16  hospitals comply with the requirements of the California Constitution and other

17  California statutes.

18      123.  The Director has a duty to comply with the federal laws, the U.S. and

19  California Constitutions and other California statutes, but has violated this duty, by

20  adopting the Non-Contracted Hospital Rates in violation of 42 U.S.C. sections

21  1396a(a)(30)(A), 1396a(a)(13)(A), 1396u-2(b)(2)(D) and 1396u-2(b)(2)(A)(ii), 42

22  C.F.R. sections 447.205 and 438.114, the State Plan, the Fifth Amendment of the

23  U.S. Constitution, section 19 of Article I of the California Constitution, California

24  Welfare and Institutions Code sections 14091.3(c)(3), California Health and Safety

25  Code sections 1268.2 and 1317.2a(d), the California Administrative Procedure Act,

26  California Government Code section 11340, *et seq.*, Title 22, California Code of

27  Regulations, section 50004 and Title 28, California Code of Regulations, section

28  1300.71(a)(3).

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

124.   Specifically, the Non-Contracted Hospital Rates violate the California Constitution and California statutes as follows:

125.   Section 19 of Article I of the California Constitution permits the taking of "private property" by the government only when the taking is "for a public use and only when just compensation . . . has first been paid to, or into court for, the owner."

126.   Takings are not limited to outright seizures or condemnations of physical property, but may include the forced diminution in the value of private property resulting from governmental regulation of the use of private business or property.

127.   The "public use" clause of the section 19 of Article I of the California Constitution permits any taking of private property only for a public purpose.

128.   The takings affected by the Non-Contracted Hospital Rates are not for a public purpose.  In this regard:

a.    The Non-Contracted Hospital Rates force Plaintiff and its members to absorb losses and thereby directly subsidize privately owned and operated Medi-Cal managed care plans;

b.    Given the prevailing capitation payment arrangements with the Department, the Medi-Cal managed care plans are the sole, direct and substantial beneficiaries of the Non-Contracted Hospital Rates;

c.    No public purpose for the Non-Contracted Hospital Rates was enunciated in Assembly Bill 1183 or any of the Department's All Plan Letters;

d.    Any public benefit that might result from plaintiff's members accepting the Non-Contracted Hospital Rates is, at best, indirect, incidental, and attenuated;

e.    The Non-Contracted Hospital Rates were enacted at the instance and for the pecuniary benefit of the managed care industry in California as a means of enhancing the profitability of private managed care plans; any intended or alleged public benefit is pretextual.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

129.   Accordingly, the takings effectuated by the Non-Contracted Hospital Rates are *per se* unconstitutional pursuant to the California Constitution.

130.   The Non-Contracted Hospital Poststabilization Rates violate Welfare and Institutions Code section 14091.3(c)(3) because the Non-Contracted Hospital Poststabilization Rates are not consistent with 42 C.F.R. section 438.114(e) as required by section 14091.3(c)(3).   To the extent 42 C.F.R. section 438.114(e) specifies a payment rate, it specifies a payment rate equal to the amount that would have been paid on a fee-for-service basis under the Medicare program through its references to various Medicare regulations.   Non-Contracted Hospital Poststabilization Rates are generally lower than the Medicare fee-for-service rates.

131.   To the extent that 42 C.F.R. section 438.114(e) does not specify a rate of payment, the Non-Contracted Hospital Poststabilization Rates are invalid because they result from an invalid delegation of legislative authority to the Department and the Director pursuant to Welfare and Institutions Code section 14091.3(c), as the Department and the Director are provided no standards whatsoever by the legislature for the development of Non-Contracted Hospital Poststabilization Rates. This delegation without standards violates the California Constitution by impermissibly authorizing the executive branch of state government to assume legislative functions which are the exclusive province of the state legislature.

132.   The Non-Contracted Hospital Rates are invalid as underground rulemaking without compliance with the procedural requirements of the California Administrative Procedure Act, Government Code sections 11340, *et seq.*  The Non-Contracted Hospital Rates constitute regulations under California law because they are rules of general applications.  However, they were implemented pursuant to APL 08-008 and APL 08-010, neither of which was adopted in accordance with the California Administrative Procedure Act.

133.   The Non-Contracted Hospital Rates are invalid because they conflict with the "reasonable and customary" payment standard of Title 28, California Code

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

2019484.5

1  of Regulations, section 1300.71(a)(3).

2      134.  The Non-Contracted Hospital Poststabilization Rates are invalid

3  because they attempt to establish a lower rate of payment for poststabilization

4  services in direct contradiction of the statutory requirement in AB 1203 that a plan

5  pay charges for care if it does not notify the hospital of its decision to either approve

6  post-stabilization services or transfer the patient or if a plan decides to transfer a

7  patient but fails to transfer the patient "within a reasonable time."

8      135.  The Non-Contracted Hospital Rates are invalid because they attempt to

9  establish a lower rate of payment for emergency services than those required by

10 California Health and Safety Code section 1317.2a(d).

11     136.  The Non-Contracted Hospital Rates are invalid because they violate

12 Title 22, California Code of Regulations, section 50004, by establishing rates that

13 are inconsistent with and violate the State Plan.

14     137.  Plaintiff has performed all conditions precedent to the filing of the

15 petition for mandamus.  No other adequate remedies exist under statute, regulation

16 or other provision of law.  The existence of declaratory relief and injunctive relief

17 does not prevent the use of mandate.  (*County of Los Angeles v. State Department of*

18 *Public Health* (1958) 158 Cal.App.2d 425, 446.)

19

20     **NINTH CAUSE OF ACTION**

21     **(DECLARATORY RELIEF)**

22     138.  Plaintiff hereby incorporates by reference paragraphs 1 through 137,

23 inclusive, as though fully set forth herein.

24     139.  An actual and justiciable controversy exists between Plaintiff and the

25 Director regarding the validity of the Non-Contracted Hospital Rates.  Plaintiff

26 contends that the Non-Contracted Hospital Rates are invalid and unlawful in

27 violation of federal statute, federal regulations, the State Plan, the U.S. and

28 California Constitutions, and California laws, while the Director contends that the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    Non-Contracted Hospital Rates are valid in all respects.

2        140.    Accordingly, pursuant to 28 U.S.C. section 2201, Plaintiff requests this

3    Court to declare that the Non-Contracted Hospital Rates are invalid and unlawful.

4        141.    No administrative appeal process or other administrative remedy is

5    available to Plaintiffs to challenge the AB 1183 Rate Reductions.

6        142.    All of the said injuries are great and immediate, for which damages at

7    law are inadequate, and for which plaintiffs have no plain, adequate or speedy relief

8    at law or otherwise.

9

10    **WHEREFORE**, Plaintiff prays for judgment as follows:

11        1.    For an Order declaring that the Non-Contracted Hospital Rates violate

12    42 U.S.C. sections 1396a(a)(30)(A), 1396a(a)(13) and 1396u-2(b)(2), 42 C.F.R.

13    section 447.205, and the Fifth Amendment of the United States Constitution and are

14    thus invalid and/or preempted by the Supremacy Clause of the United States

15    Constitution, art. IV;

16        2.    For an Order declaring that the Non-Contracted Hospital

17    Poststabilization Rates violate 42 C.F.R. section 438.114 and are thus invalid and/or

18    preempted by the Supremacy Clause of the United States Constitution, art. IV;

19        3.    For an Order declaring that the Non-Contracted Hospital Rates

20    represent a *de facto* amendment to the State Plan and therefore said rate reductions

21    cannot be imposed without federal approval;

22        4.    For an Order declaring that the Non-Contracted Hospital Rates violate

23    section 19 of Article I (takings clause) and section 3 of Article III (separation of

24    powers) of the California Constitution, the California Administrative Procedure Act,

25    California Government Code section 11340, *et seq.*, Title 22, California Code of

26    Regulations, section 50004, and Title 28, California Code of Regulations

27    1300.71(a)(3), and are thus invalid;

28        5.    For an Order declaring that the Non-Contracted Hospital Emergency

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

1  Rates violate California Health and Safety Code section 1317.2a(d), and are thus

2  invalid;

3      6.    For an Order declaring that the Non-Contracted Hospital

4  Poststabilization Rates violate California Health and Safety Code section 1268.2,

5  and Welfare and Institutions Code section 14091.3(c)(3), and are thus invalid;

6      7.    For an Order declaring that, when setting Non-Contracted Hospital

7  Rates in the future, the Department must consider whether the rates have a

8  reasonable relationship to the costs of providing services to Medi-Cal beneficiaries

9  to comply with federal Medicaid requirements and so as to prevent a taking for the

10  sole, primary benefit of a private party;

11      8.    For a Writ of Mandate invalidating the Non-Contracted Hospital Rates

12  because they violate 42 U.S.C. sections 1396a(a)(30)(A), 1396a(a)(13) and 1396u-

13  2(b)(2), 42 C.F.R. section 447.205, the Fifth Amendment of the United States

14  Constitution, section 19 of Article I (takings clause) and section 3 of Article III

15  (separation of powers) of the California Constitution, the California Administrative

16  Procedure Act, California Government Code section 11340, *et seq.*, Title 22,

17  California Code of Regulations, section 50004, and Title 28, California Code of

18  Regulations 1300.71(a)(3), and ordering the Director not to implement the Non-

19  Contracted Hospital Rates;

20      9.    For a Writ of Mandate invalidating the Non-Contracted Hospital

21  Emergency Rates because they violate California Health and Safety Code section

22  1317.2a(d), and ordering the Director not to implement the Non-Contracted Hospital

23  Emergency Rates;

24      10.    For a Writ of Mandate invalidating the Non-Contracted Hospital

25  Poststabilization Rates because they violate 42 C.F.R. section 438.114, California

26  Health and Safety Code section 1268.2, and California Welfare and Institutions

27  Code section 14091.3(c)(3) and ordering the Director not to implement the Non-

28  Contracted Hospital Poststabilization Rates;

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX: (310) 551-8181

11.   For an Order preliminarily and permanently enjoining Director from effectuating the Non-Contracted Hospital Rates;

12.   For the costs of suit, including reasonable attorneys' fees incurred by Plaintiff pursuant to 42 U.S.C. § 1988 or as may otherwise be authorized by law; and

13.   Such other and further relief as may be just and proper.

DATED: May 22, 2009                         HOOPER, LUNDY & BOOKMAN, INC.

By:_____
LLOYD A. BOOKMAN
Attorneys for Plaintiff

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

2019484.5

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dean D. Pregerson and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV09- 3694 DDP (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Lloyd A. Bookman, SBN 89251
Felicia Y. Sze, SBN 233441
HOOPER, LUNDY & BOOKMAN, INC.
1875 Century Park East, Suite 1600
Los Angeles, California  90067-2517
(310) 551-8111

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

CALIFORNIA HOSPITAL ASSOCIATION

PLAINTIFF(S)

v.

DAVID MAXWELL-JOLLY, DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF HEALTH CARE
SERVICES

DEFENDANT(S).

CASE NUMBER

CV09-3694 DDP (JCx)

**SUMMONS**

TO:    DEFENDANT(S):  DAVID MAXWELL-JOLLY

A lawsuit has been filed against you.

Within ___20___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Lloyd A. Bookman_____, whose address is _1875 Century Park East, Suite 1600, Los Angeles, California  90067-2517_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _May 22, 2009_____

By: _Natalie Gangaria_____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| CALIFORNIA HOSPITAL ASSOCIATION | DAVID MAXWELL-JOLLY, DIRECTOR OF THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Lloyd A. Bookman and Felicia Y Sze | |
| Hooper, Lundy & Bookman, Inc., | |
| 1875 Century Park East, Suite 1600 | |
| Los Angeles, CA 90067 | |
| (310) 551-8111 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** 0.00

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Plaintiff claims that Defendant's Non-Contracted Hospital Rates violate the federal Medicaid Act, 42 U.S.C. ss. 1396a(a)(3)(A), 1395a(a)(13)(A) and 1396v-2()(2), 42 C.F.R. ss. 447.205 and 438.114, the U.S. and California Constitutions' takings clauses, and state laws.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities -- Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☒ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV09-3694

| FOR OFFICE USE ONLY: | Case Number: | |
|---|---|---|
| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No  ☐ Yes

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☐ No  ☒ Yes

If yes, list case number(s): 2:08-cv-03315; 2:09-cv-0382; 2:09-cv-0722

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☒ A. Arise from the same or closely related transactions, happenings, or events; or
☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | CALIFORNIA HOSPITAL ASSOCIATION - Sacramento County |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| DAVID MAXWELL-JOLLY, DIRECTOR OF THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES - located in Sacramento County but has offices in Los Angeles County |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):    [signature]    Date May 22, 2009

Lloyd A. Bookman

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

American LegalNet, Inc.
www.FormsWorkflow.com